IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

RAYMOND H. NOTTINGHAM,

       Plaintiff,

V.                                        CIVIL ACTION NO. 3:08-0338

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

## MEMORANDUM ORDER

In this action, filed under the provisions of 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income prior to September 14, 2003. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff protectively filed his applications on June 10, 2004, alleging disability commencing December 1, 1998,[1] as a result of leg pain, stomach problems, pulmonary impairment, hernia, hypertension and high cholesterol. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff disabled as of September 14, 2003 but not before, in a decision which became the final decision of the Commissioner when the Appeals Council denied

---

[1]Plaintiff's insured status expired September 30, 2001, and, for purposes of his application for disability insurance benefits, it was incumbent upon him to establish disability on or before this date. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971).

a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

From plaintiff's alleged onset date to the time he was found disabled, his age ranged from forty-four to forty-eight. He obtained a general equivalency diploma and has past relevant employment experience as a telemarketer, cashier, truck driver, stocker, shipper, mechanic, fork truck driver and construction worker. During the period from plaintiff's alleged onset date through September 13, 2003, the administrative law judge found he suffered from artherosclerotic coronary artery disease, an impairment he considered severe. Concluding that plaintiff had the residual functional capacity for a limited range of light level work and that his past work as a telemarketer and cashier was not precluded by these limitations, the administrative law judge found him not disabled.

The September 14, 2003, onset date was chosen by the administrative law judge because plaintiff suffered a myocardial infarction on that day which led to four-vessel bypass surgery and continuing problems with chest and leg pain. Plaintiff ceased employment on December 1, 1998 but did not file his applications until June 10, 2004. The hearing was not held until February 22, 2006, over seven years after plaintiff stopped working. With regard to his medical condition at the time he ceased working until the date of his heart attack, plaintiff claimed he "couldn't even function," was unable to sleep due to pain, to eat because of unexplained vomiting, had difficulty walking and driving due to leg pain, and also suffered with heart burn, shortness of breath, and high blood pressure.

In stark contrast to these alleged problems, the medical evidence reveals minimal treatment prior to September 2003. On October 18, 1996, plaintiff was seen at the Veteran's Administration

Medical Center ("VAMC") reporting he was homeless and had breathing problems. The report of this visit does not reflect any medical findings. Apparently plaintiff did not return to the VAMC until July 15, 1999 when he came as a walk-in with complaints of right lower quadrant pain off and on for a year, along with constipation. Plaintiff specifically denied having nausea, vomiting or chest pain. The diagnosis was abdominal pain,[2] and further studies were scheduled which included an abdominal ultrasound, interpreted as showing only mild thickening of the gall bladder wall, and a barium enema, interpreted as normal. On August 20, 1999, plaintiff was seen with similar complaints, but exam revealed only "minimal" tenderness in the right upper quadrant of the abdomen. The doctor's impression was questionable gall stones, borderline hypertension – to be handled by lifestyle and diet changes – and constipation for which plaintiff was given medication.

There is no indication of any further treatment until plaintiff was seen at St. Mary's Medical Center on September 14, 2003 with chest pain and evidence he had experienced a myocardial infarction. It was noted he had no previous history of coronary artery disease, hypertension or lipid abnormalities, and the frequent episodes of dyspepsia he had experienced were attributed to a hiatal hernia and reflux esophagitis. Plaintiff did report a nine-month history of weakness and tiredness of the right lower extremity after walking just eighty yards.[3] He also reported, however, that he was walking about a mile daily at that time. In addition to coronary artery blockages, the cardiac catherization revealed peripheral vascular disease and right exterior iliac occlusion, but plaintiff had

_____

[2]Although plaintiff asserts in his brief that he received a diagnosis of 4-way coronary artery by-pass grafting, and status post-myocardial infarction at this time, he has obviously relied on a page that was out of sequence in the VAMC treatment notes as the myocardial infarction and by-pass surgery clearly did not occur until September 2003.

[3]Another report says eighty feet and it is not clear which is correct, although eighty yards seems more reasonable.

no history of treatment for leg pain and did not seek any treatment until January 2004. While this subsequently became a continuing problem, plaintiff repeatedly refused surgery to correct it, and there is simply no evidence that it bothered him significantly prior to his heart attack.

Acknowledging that plaintiff's atherosclerotic coronary artery disease had been in existence prior to his heart attack and limited his physical ability to work, the administrative law judge found it was a severe impairment. Since there was not evidence of significant limitation from any other condition he may have experienced, the administrative law judge determined this was the only severe impairment established by the evidence prior to September 14, 2003. He further determined, consistent with the December 2, 2004 residual functional capacity assessment from a state agency medical advisor, that plaintiff could perform light level work requiring no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling and no concentrated exposure to hazards or extremes of cold or heat. This consultant found insufficient evidence to arrive at an assessment prior to September 30, 2001, plaintiff's date last insured; however, despite this lack of evidence, the administrative law judge determined that this residual functional capacity applied to that period as well.

Plaintiff raises several objections to the administrative law judge's decision. First, he contends the assessment of his credibility prior to his onset date was erroneous. To support his argument, however, he points to evidence relating to his open heart surgery and medical conditions which did not become significant until on or after the onset date. He also cites to his testimony in which he alleged constant, severe leg pain, breathing problems, inability to climb stairs, shakes and tremors, loss of balance, suicidal thoughts and inability to lift anything due to heartburn and chest pain.

4

The Court does agree with plaintiff that the administrative law judge's credibility findings for the period prior to his onset date do not contain specific reasons for his obvious rejection of plaintiff's testimony about his impairments during that time. While such an oversight on the part of the administrative law judge would normally require remand for him to provide a sufficient basis for his credibility determination, the Court finds, in light of the minimal evidence from that period, that this would not change the result in this case. See, Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (affirming decision despite error "because there is no question but that [the administrative law judge] would have reached the same result notwithstanding his initial error [.]") See also, Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.") The Court concludes, under these circumstances, that remand for the administrative law judge to evaluate more specifically plaintiff's credibility during the period prior to his onset date would be an inefficient use of judicial time and resources since the result on remand would clearly be the same.

Plaintiff also argues the administrative law judge failed to develop medical evidence regarding his pain. Again, he cites to conditions which were either not established or not significant prior to his September 14, 2003 hospitalization. He does not identify any evidence which was in existence at that time but not submitted by him or not obtained by the Commissioner at his request. This argument clearly has no merit.

Next, plaintiff asserts the administrative law judge failed to consider the combination of his impairments which "totally disable him to meet or exceed the combination of impairments listing provided by the Social Security Regulations ... ." Plaintiff does not indicate which listing his

impairments meet, but the administrative law judge determined, and the evidence supports, that he did not meet or equal any listing prior to his onset date. Therefore, this argument also lacks merit.

Finally, plaintiff argues essentially that the administrative law judge's decision is not supported by substantial evidence. He objects to the administrative law judge adopting the state agency medical advisor's residual functional capacity assessment over his testimony, which is lacking in credibility, as noted, and over reports from his treating physicians at the VAMC. These physicians did not express any opinions as to residual functional capacity or limitations plaintiff was experiencing, however. The administrative law judge did accord their reports significant weight in determining that plaintiff was unable to work after his heart attack and bypass surgery.

Plaintiff also asserts that it is clear from the medical evidence that he suffered from atherosclerotic coronary artery disease before September 30, 2001, his date last insured. The administrative law judge agreed with this assertion as he found this had been a severe impairment since plaintiff's alleged onset date. He did not, however, consider that the symptoms related to this impairment were severe enough at that time to prevent him from performing a limited range of light level work, and the evidence clearly supports this determination.

Review of the record establishes to the Court's satisfaction that the administrative law judge's findings with respect to plaintiff's impairments and their severity, the resultant work-related limitations, the weight given medical opinions, the assessment of plaintiff's credibility and the determination that he could perform his past work are supported by substantial evidence. Under such circumstances, the decision of the Commissioner must be affirmed.

On the basis of the foregoing, it is **ORDERED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted, and the decision of the Commissioner affirmed.

ENTER:  December 21, 2009

MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE